J-S71039-19

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

COMMONWEALTH OF PENNSYLVANIA   :   IN THE SUPERIOR COURT OF
                                              :            PENNSYLVANIA
                                                :
                  v.                        :
                                              :
                                              :
STORM E. MASON                       :
                                              :
            Appellant           :     No. 3278 EDA 2018

Appeal from the PCRA Order Entered October 16, 2018
In the Court of Common Pleas of Philadelphia County Criminal Division at
No(s): CP-51-CR-0000681-2013

BEFORE: BOWES, J., MURRAY, J., and McLAUGHLIN, J.

MEMORANDUM BY McLAUGHLIN, J.:          **FILED APRIL 27, 2020**

Storm E. Mason appeals the denial of his request for relief under the

Post Conviction Relief Act ("PCRA"), 42 Pa.C.S.A. §§ 9541-9546. Mason

maintains that the PCRA court should have granted his PCRA petition because

he pled and proved his claim of ineffective assistance of counsel. We affirm.

A jury found Mason guilty of third-degree murder, firearms not to be

carried without a license, carrying firearms on public streets or public property

in Philadelphia, and possessing instruments of crime.[1] The facts giving rise to

these convictions are as follows:

> On the night of October 15, 2012, [Mason] and his girlfriend,
> [Reed], went to Big Fella's Bar . . . in Philadelphia,
> Pennsylvania. When [Mason] entered Big Fell's Bar, he saw
> a woman that he knew and greeted the woman with a hug.
> [The victim], the nephew of the woman [Mason] hugged,

---

[1] 18 Pa.C.S.A. §§ 2502(c), 6106(a)(1), 6108, and 907, respectively.

> pushed [Mason] and told him not to hug [the victim's] aunt. This upset [Mason] and made him angry.
>
> Shortly thereafter, [Mason], Reed, and [Mason's] friend Kylif, left the bar. [The victim] and his cousin, . . . , then left the bar as well. While everyone was gathered outside, [Mason] and Kylif started to "play fight" with each other. [Mason] then attempted to get [the victim] to "play fight" as well. [Mason] continued to provoke [the victim] until [the victim] punched [Mason] fell into the street.
>
> [Mason] then picked himself up off the ground and told [the victim], "Give me a fair one, a fair one." [The victim] replied, "Alright, alright," and started to walk towards [Mason] in the street. [Mason] then reached into his jacket and pulled out a gun and started to fire at [the victim]. [The victim] turned around and attempted to run after [Mason] opened fire. [The victim] was hit by three bullets and fell to the ground. [Mason] started to run away after [the victim] fell. However, [Mason] stopped, turned back, and returned towards [the victim], firing two more bullets at [the victim's] body. [Mason] shot [the victim] a total of five times. . . .

Trial Ct. Op., filed 2/15/19, at 3 (citations to notes of testimony and footnotes omitted). Reed was also an eyewitness to the murder. *See* N.T., 6/17/14, at 220.

Prior to trial, the Commonwealth filed a motion *in limine* requesting to admit evidence of a prior domestic abuse incident between Mason and Reed. The court denied the request, with the caveat that if defense counsel "open[ed] the door" to the evidence, or if the witness completely denied being at the murder scene, the court would allow the evidence. N.T., 6/16/14, at 20-21.

At trial, during his cross-examination of Reed, defense counsel asked Reed questions about her access to a telephone after the murder. *See* N.T.,

6/18/14, at 39, 49. The court concluded that in so doing, counsel had "opened

the door" to the evidence about the prior domestic abuse incident:

> [T]hat trial counsel's purpose in asking those questions was to demonstrate that Reed could have, but failed to, contact the police and report [Mason] during these days, and therefore permitted the Commonwealth, on redirect examination of Reed, to elicit testimony regarding the pistol-whipping incident as fair reply to the inference created by trial counsel.

Trial Ct. Op. at 5. The prosecution then presented Reed's testimony about an

incident in which Mason pistol-whipped her.

The jury ultimately convicted Mason of the above-referenced crimes and

the trial court imposed an aggregate sentence of 20 to 40 years' incarceration.

We affirmed the judgment of sentence, and our Supreme Court denied

Mason's petition for allowance of appeal on March 29, 2016. ***Commonwealth***

***v. Mason***, 2015 WL 6160077 (Pa.Super. Oct. 13, 2015), *appeal denied*, 136

A.3d 980 (table) (Pa. March 29, 2016).

Storm filed the instant timely PCRA petition and the PCRA court

appointed counsel who filed an amended PCRA petition.[2] The amended petition

---

[2]  Regarding the timeliness of Mason's PCRA petition, the PCRA court explained:

> [Mason's] *pro se* petition was time-stamped on June 28, 2017, which would have made his PCRA petition untimely by one day. However, in his certificate of service, [Mason] noted that he turned the petition over to prison authorities on June 18, 2017. Under the prisoner mailbox rule, a

alleged that trial counsel had rendered ineffective assistance by "opening the door" to the evidence about the domestic abuse incident. Amended Petition under Post-Conviction Relief Act, filed 1/19/18, at ¶¶ 9, 10. Following the Commonwealth's response to the amended petition, the PCRA court issued notice of its intent to dismiss the petition without a hearing. ***See*** Pa.R.Crim.P. 907. On October 16, 2018, the PCRA court dismissed the petition. This timely appeal followed.

Mason raises one issue for our review:

> I. Did the Post-Conviction Relief Act (PCRA) Court err in denying relief and dismissing the PCRA without holding a hearing, even though [Mason] could have proven that trial counsel was ineffective?

Mason's Br. at 3.

"Our standard of review of the denial of a PCRA petition is limited to examining whether the evidence of record supports the court's determination and whether its decision is free of legal error." ***Commonwealth v. Beatty***, 207 A.3d 957, 960-61 (Pa.Super. 2019).

Counsel is presumed to have been effective and thus the burden lies on the petitioner to plead and prove all of the following: "(1) the underlying substantive claim has arguable merit; (2) counsel did not have a reasonable

---

document is deemed to be filed on the date that it is placed in the hands of prison authorities. ***See Commonwealth v. Wojtaszek***, 951 A.2d 1169, 117[0] n.3 (Pa.Super. 2008).Therefore, [Mason's] petition was treated as timely.

PCRA Court Opinion, filed 2/15/19, at 1 n.1.

basis for his or her act or omission; and (3) the petitioner suffered prejudice as a result of counsel's deficient performance, 'that is, a reasonable probability that but for counsel's act or omission, the outcome of the proceeding would have been different.'" ***Commonwealth v. Wholaver***, 177 A.3d 136, 144 (Pa. 2018) (citation omitted). Failure to plead or prove any prong of the ineffectiveness standard "will defeat an ineffectiveness claim." ***Commonwealth v. Fears***, 86 A.3d 795, 804 (Pa. 2014).

Here, we proceed directly to the prejudice prong first because we conclude that Mason has failed to establish that counsel's actions prejudiced him. Mason argues that he sustained prejudice because, but for counsel's alleged error, "the jury would not have learned about [Mason's] prior violent acts with a weapon." Mason's Br. at 10. While we agree that absent counsel's actions, the jury would not have learned about the past violent exchange between Reed and Mason, we do not agree that there is "a reasonable probability that but for counsel's act . . ., the outcome of the proceeding would have been different." ***Wholaver***, 177 A.3d at 144.

Here, the Commonwealth presented overwhelming evidence of Mason's guilt and his violent nature. Both Reed and another eyewitness testified that they saw Mason shoot the victim multiple times as the victim ran away. N.T., 6/17/14, at 205. Their testimony was corroborated by video surveillance footage and Mason's own admission at trial that he fired a gun on the night of the incident, though he claimed that he could not see anything at the time. N.T., 6/19/14, at 57-59. Further corroboration came from the testimony of

the medical examiner that the victim's wounds were consistent with the eyewitnesses' accounts.

Moreover, prior to and after Reed's testimony about being "pistol whipped" by Mason, the court gave a limiting instruction to the jury that the evidence "could not be used to conclude that [Mason] was a violent person." TCO at 6.

> THE COURT: All right. Ladies and gentlemen, I'm going to admit this testimony strictly to the extent if you believe that it bears upon this witness' behavior. You are not to use it for any other purpose. You are certainly not permitted to use it to conclude that [Mason] was in fact a violent person. For this purpose, the only reason for which you may consider it is in how it affected the behavior of this witness. Okay?
>
> ***
>
> THE COURT: Okay. I'll direct you, that's enough on that. And once again, ladies and gentlemen, it's important you understand the limited purpose for which this is being admitted, okay. The behavior, the conduct, and the believability of this witness is something you have to consider and that's the only purpose for which you may consider any of this evidence that I just admitted regarding what she says happened between her and [Mason] before the time of the shooting that's at issue in this case. All right?

N.T. 6/18/14, at 86-87, 88.

Furthermore, Reed and her mother testified about Mason's violent behavior on other occasions, without objection. We thus conclude that Mason was not prejudiced by counsel's line of questioning that opened the door to otherwise excluded evidence. We therefore affirm the denial of his PCRA petition.

- 6 -

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 4/27/20